IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF THE HOKUA @ 1288 ALA MOANA,<br><br>          Plaintiff,<br><br>     vs.<br><br>WATTS WATER TECHNOLOGIES, INC., aka WATTS REGULATOR COMPANY; WATTS RADIANT, INC.; MURRAY CORPORATION; BENJAMIN WOO ARCHITECTS, LLC; NOTKIN HAWAII, INC.; OETIKER CORPORATION, aka OETIKER AMERIKA; JOHN AND JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE GOVERNMENTAL AGENCIES 1-10; and DOE ASSOCIATIONS 1-10;<br><br>          Defendants. | Civ. No. 08-00463 HG-KSC |

**ORDER GRANTING DEFENDANT OETIKER'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT (DOC. 118)**

Plaintiff is the association of apartment owners for the Hokua, a condominium building located at 1288 Ala Moana Boulevard, Honolulu, Hawaii.  In the Second Amended Complaint, Plaintiff alleges that the potable water systems installed in the Hokua are defective.  Plaintiff has entered into settlement agreements with each of the Defendants, with the exception of Defendant Oetiker,[1] a Michigan corporation that manufactures

---

[1] According to Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint, "Oetiker, Inc." is the correct name of

1

clamps for plumbing fixtures installed in the Hokua.  Defendant Oetiker moves to dismiss all claims filed against it for lack of personal jurisdiction, arguing insufficient contacts with Hawaii.

Defendant Oetiker's motion is **GRANTED.**

### PROCEDURAL HISTORY

On August 5, 2009, Plaintiff filed a Second Amended Complaint.  (Doc. 107.)

On October 16, 2009, Defendant Oetiker filed a Motion To Dismiss Second Amended Complaint.  (Doc. 118.)

On November 10, 2009, Plaintiff filed an Opposition. (Doc. 124.)  Defendant Watts Water Technologies, Inc. and Defendant Murray Corporation each filed an Opposition. (Docs. 126 and 127.)

On December 2, 2009, Defendant Oetiker filed a Reply. (Doc. 133.)

On February 12, 2010, the Court filed a Minute Order granting Defendant Watts' request for further discovery. (Doc. 139.)

On May 7, 2010, at the request of the parties, the Court filed a Stipulation And Order To Extend Supplemental Briefing Schedule Regarding Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint.  (Doc. 174.)

---

the entity alleged in the Second Amended Complaint to be "Oetiker Corporation, aka Oetiker Amerika."  (Doc. 118.)  The Court refers to Defendant Oetiker, Inc. as "Oetiker."

On July 1, 2010, Plaintiff filed a Supplemental Memorandum In Opposition.  (Doc. 199.)

On July 16, 2010, Defendant Oetiker filed a Response to Plaintiff's Supplemental Memorandum In Opposition.  (Doc. 209.)

Pursuant to Local Rule 7.2(d), the Court elected to decide the motion on the pleadings without a hearing.  (Doc. 119.)

## BACKGROUND

Plaintiff is the association of apartment owners for the Hokua, a condominium building located at 1288 Ala Moana Boulevard, Honolulu, Hawaii.  (Second Amended Complaint at ¶ 1, (Doc. 107).)  Plaintiff filed its Second Amended Complaint on August 5, 2009, against various Defendants involved in the manufacture, design, and installation of the Hokua's potable water systems.  Id.  Defendants Watts Water Technologies, Inc. ("Watts") and Defendant Murray Corporation ("Murray") each filed cross-claims against Defendant Oetiker.

Plaintiff alleges that the Hokua was built between 2003 and early 2006.  Id. at ¶ 15.  Each of the 245 residential apartment units in the Hokua has its own, separate potable water system. Id. at ¶¶ 13-15.  The parties agree that clamps manufactured by Defendant Oetiker, a Michigan corporation, were installed in the Hokua's potable water systems.  These potable water systems were installed between late 2004 and early 2006.  Id.  Plaintiff claims that the Hokua's potable water systems began to leak in

September 2006.  Id. at ¶ 20.  Plaintiff asserts that defective brass fittings and clamps, installed in the potable water systems, caused the leakage.  Id. at ¶¶ 27-33.

## STANDARD OF REVIEW

Plaintiff bears the burden of demonstrating that personal jurisdiction is appropriate.  Flynt Distrib. Co, Inc. V. Harvey, 734 F.2d 1389, 1392 (9th Cir. 2004).  Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts."  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990). Uncontroverted allegations in the plaintiff's complaint must be taken as true.  AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).  Although the plaintiff cannot simply rest on the bare allegations of its complaint, conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

## ANALYSIS

Where, as here, no federal statute governs personal jurisdiction, the district court applies the law of the state in which the court sits.  Fed. R. Civ. P. 4(k)(1)(A); Panavision Int'l L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Hawaii's long-arm jurisdictional statute is coextensive with

4

federal due process requirements, so the jurisdictional analyses under state law and federal due process requirements are the same.  Cowan v. First Ins. Co., 61 Haw. 644, 649 (1980).

For the Court to obtain jurisdiction, Defendant Oetiker must have sufficient "minimum contacts" with the state of Hawaii such that the exercise of due process "does not offend traditional notions of fair play and substantial justice." Schwarzenegger, 374 F.3d at 801 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Due process is satisfied if there is either "general jurisdiction" or "specific jurisdiction" over Defendant Oetiker.  Sher, 911 F.2d at 1361.

## I.   General Jurisdiction Over Defendant Oetiker Has Not Been Established.

Under general jurisdiction, a defendant whose contacts with a state are "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts.  Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1171 (9th Cir. 2006) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 (1984)).  The standard for establishing general jurisdiction is high and requires that the defendant's contacts approximate physical presence.  Tuazon, 433 F.3d at 1169.

The parties have not argued that the Court has general jurisdiction over Defendant Oetiker, so the Court does not reach

the question of general jurisdiction over Oetiker.[2]

## II.   Plaintiff and Cross-Claimants Have Not Made A Prima Facie Showing That The Court Has Specific Jurisdiction Over Defendant Oetiker.

In determining whether to exercise specific jurisdiction, the Court examines the quality and nature of Defendant Oetiker's contacts with the forum state in relation to the cause of action. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987).  The Ninth Circuit Court of Appeals has adopted a three-prong test for analyzing specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007) (internal citations omitted).

---

[2] Plaintiff described its position as follows: "As stated in the Association's Opposition Memorandum, the Association is not asserting that Hawaii has general jurisdiction over Oetiker but that Hawaii has specific jurisdiction over Oetiker." (Plaintiff's Supplemental Memorandum In Opposition To Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint at p. 5, (Doc. 199).)

Plaintiff bears the burden of satisfying the first two prongs of the test.  Id.  If Plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state.  Id.  If, on the other hand, Plaintiff succeeds in satisfying the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  Id. (citing Schwarzenegger, 374 F.3d at 802).

   **A.  Plaintiff and Cross-Claimants have not sufficiently alleged that Defendant Oetiker purposefully availed itself of the privilege of doing business in Hawaii.**

The first prong of the specific jurisdiction analysis can be satisfied by Defendant Oetiker's purposeful availment of the privilege of doing business in the forum state or purposeful direction of activities at the forum state, or by some combination of purposeful availment and direction.  Menken, 503 F.3d at 1057.  A purposeful availment analysis is most often applied in suits where the defendant has placed a product in the stream of commerce, or in suits sounding in contract.  Holland Am. Line Inc. v. Wärtsilä N. Am., Inc., 485 F.3d 450, 459-460 (9th Cir. 2007) (internal citations omitted).  A purposeful direction analysis applies only to intentional torts.  Id. (internal citations omitted).  Plaintiff and Cross-Claimants Watts and Murray allege that Defendant Oetiker placed defective clamps into the stream of commerce.  A purposeful availment

analysis applies.

Plaintiff has alleged an explanation as to how Defendant Oetiker's clamps were installed in the Hokua. Plaintiff alleges that the clamps were installed by a local plumbing contractor, who purchased the clamps from a distributor, Barry Pipe & Supply, Inc. (Supplemental Memorandum In Opposition To Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint at p. 4, (Doc. 199).) Plaintiff alleges that the distributor purchased the clamps from Defendant Watts, who purchased them from Defendant Murray. Id. Plaintiff claims that Defendant Murray purchased the clamps directly from Defendant Oetiker. Id.

Plaintiff's argument that Defendant Murray purchased the clamps directly from Defendant Oetiker is based on an internal e-mail between employees of Defendant Watts. (E-mail dated Oct. 13, 2004, attached as Exh. E-2 to Plaintiff's Memorandum In Opposition To Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint, (Doc. 124-11).) The entirety of the e-mail states:

> I [Mary M. Stewart] talked with Jim SIlk [sic], Murray Corp, today about the 5/8" Cinch Clamp. Murray can bbuy [sic] 50,000 5/8" clamps from Oetiker for .27/ea. He seems to think Oetiker knows who Murray's customer may be. He tells me that Murray plans to manufacture 5/8" Clamps and have available for us by Jan-Feb. I asked for an update on his production release dates by size. He will get back to me on this.

The plain language of the e-mail does not support Plaintiff's position. The e-mail states that Mary M. Stewart, an employee of

Defendant Watts, spoke with Jim Silk, an employee of Defendant

Murray.  According to the e-mail, Silk represented that he could

buy "5/8" clamps from Oetiker."  There is no evidence, however,

that any purchase was actually made.

D. Chris Parker, the President of Defendant Oetiker, stated

in his declaration that during the relevant time period,

Defendant Oetiker sold clamps only to a company called

Uponor HSDNA ("Uponor").  (Declaration of D. Chris Parker

("Parker Decl.") at ¶ 6, (Doc. 209-2).)  Uponor and Defendant

Oetiker were bound by a Manufacturing And Supply Agreement

("Agreement"), which lasted from May 2002 through April 2006, in

which Defendant Oetiker sold clamps exclusively to Uponor for use

with tubing products in plumbing and heating applications.

(Agreement, attached as Exh. 24 to Plaintiff's Supplemental

Memorandum In Opposition To Defendant Oetiker, Inc.'s Motion To

Dismiss Second Amended Complaint, (Doc. 199-2).)  Parker states

in his declaration that during the relevant time period,

Defendant Oetiker did not transact any business in Hawaii, and

that Defendant Oetiker had no knowledge that any of its products

were being considered for the Hokua.  (Parker Decl. at ¶¶ 3, 8,

(Doc. 209-2).)  According to Parker's declaration, Defendant

Oetiker was unable to find any records of any sales of clamps to

either Defendant Murray or Defendant Watts.  Id. at ¶ 6.  Parker

also states that during the relevant time period, Defendant

Oetiker did not manufacture or sell a 5/8" clamp, the specific model referenced in the October 31, 2004 e-mail.  <u>Id.</u> at ¶ 7.

The Ninth Circuit Court of Appeals provided guidance on how to apply a purposeful availment analysis in <u>Holland Am. Line Inc.</u> <u>v. Wärtsilä N. Am., Inc.</u> 485 F.3d at 459-460.  There the appellate court stated that the placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state.  <u>Id.</u> at 459 (citing <u>Asahi Metal</u> <u>Indus. Co. v. Superior Ct.</u>, 480 U.S. 102, 112 (1987)).  Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state.  <u>Id.</u> (citing <u>Asahi</u>, 480 U.S. at 112).  Purposeful availment requires "something more" than the mere placement of a product into the stream of commerce.  <u>Id.</u> (citing <u>Asahi</u>, 480 U.S. at 111).

Plaintiff asserts that Defendant Oetiker's Agreement with Uponor and Defendant Oetiker's website satisfy the "something more" requirement.  Defendant Oetiker placed its clamps into the stream of commerce by selling them to Uponor.  (Parker Decl. at ¶ 4, (Doc. 209-2).)  There is no evidence, however, that Defendant Oetiker had any knowledge or expectation that the clamps would be installed in Hawaii.  The website, available at www.oetiker.com, is entirely passive, containing information on

the various products manufactured by Defendant Oetiker.   The
website does not provide any direct means for purchasing parts or
requesting services.   In <u>Holland Am. Line</u>, the Ninth Circuit
Court of Appeals held that such passive websites do not satisfy
the purposeful availment standard.   485 F.3d at 460.

Drawing all reasonable inferences in Plaintiff's favor,
there is no evidence that Defendant Oetiker purposefully availed
itself of the privilege of conducting activities in the state of
Hawaii.

**B.   Plaintiff has not sufficiently alleged that its claims
arose from Defendant Oetiker's forum-related
activities.**

The second prong of the minimum contacts test requires that
Plaintiff's claims arise from Defendant's forum-related
activities.   In determining whether claims arise out of forum-
related conduct, the Ninth Circuit Court of Appeals has adopted a
"but for" test.   <u>Menken</u>, 503 F.3d at 1058 (citing <u>Myers v.
Bennett Law Offices</u>, 238 F.3d 1068, 1075 (9th Cir. 2001)).   As
discussed above, Defendant Oetiker did not purposefully avail
itself of the privilege of doing business in Hawaii.   Plaintiff's
claims therefore did not arise "but for" Defendant's alleged
forum-related activities.   <u>Menken</u>, 503 F.3d at 1058.

**C.   The Court does not reach the issue of reasonableness.**

The third prong of the minimum contacts test requires that
the exercise of jurisdiction must be reasonable.   Courts reach

this step only if the plaintiff demonstrates that the defendant's activities were purposefully directed at the forum state and that the plaintiff's claims arose out of the defendant's forum-related conduct.  <u>Doe v. American Nat. Red Cross</u>, 112 F.3d 1048, 1052 (9th Cir. 1997) (citing <u>Sinatra v. Nat. Enquirer, Inc.</u>, 854 F.2d 1191, 1198 (9th Cir. 1988)).  Plaintiff here has not sufficiently alleged that Defendant Oetiker purposefully availed itself of the privilege of doing business in Hawaii or that Plaintiff's claims arose from Defendant Oetiker's forum-related activities.  It is unnecessary to reach the question of whether the exercise of personal jurisdiction would be reasonable.

//

//

//

//

//

//

//

//

//

//

//

//

**CONCLUSION**

(1)   Defendant Oetiker's Motion to Dismiss Second Amended

     Complaint, filed on October 16, 2009, (Doc. 118), is

     **GRANTED**;

(2)   The Clerk of Court is **DIRECTED** to enter judgment in favor of

     Defendant Oetiker and to close the case.


     IT IS SO ORDERED.

     DATED:     September 27, 2010, Honolulu, Hawaii.



                                          /S/ Helen Gillmor
     _____
                                   Helen Gillmor
                                   United States District Judge



Ass'n of Apt. Owners of the Hokua @ 1288 Ala Moana v. Watts Water
Technologies, Inc., et al.; Civil No. 08-00463 HG-KSC; **ORDER
GRANTING DEFENDANT OETIKER'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT (DOC. 118).**

13

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF THE HOKUA @ 1288 ALA MOANA, | ) ) ) | Civ. No. 08-00463 HG-KSC |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| WATTS WATER TECHNOLOGIES, INC., aka WATTS REGULATOR COMPANY; WATTS RADIANT, INC.; MURRAY CORPORATION; BENJAMIN WOO ARCHITECTS, LLC; NOTKIN HAWAII, INC.; OETIKER CORPORATION, aka OETIKER AMERIKA; JOHN AND JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE GOVERNMENTAL AGENCIES 1-10; and DOE ASSOCIATIONS 1-10; | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

**ORDER GRANTING DEFENDANT OETIKER'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT (DOC. 118)**

Plaintiff is the association of apartment owners for the Hokua, a condominium building located at 1288 Ala Moana Boulevard, Honolulu, Hawaii.  In the Second Amended Complaint, Plaintiff alleges that the potable water systems installed in the Hokua are defective.  Plaintiff has entered into settlement agreements with each of the Defendants, with the exception of Defendant Oetiker,[1] a Michigan corporation that manufactures

_____

    [1] According to Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint, "Oetiker, Inc." is the correct name of

1

clamps for plumbing fixtures installed in the Hokua.  Defendant Oetiker moves to dismiss all claims filed against it for lack of personal jurisdiction, arguing insufficient contacts with Hawaii.

Defendant Oetiker's motion is **GRANTED.**

### PROCEDURAL HISTORY

On August 5, 2009, Plaintiff filed a Second Amended Complaint.  (Doc. 107.)

On October 16, 2009, Defendant Oetiker filed a Motion To Dismiss Second Amended Complaint.  (Doc. 118.)

On November 10, 2009, Plaintiff filed an Opposition. (Doc. 124.)  Defendant Watts Water Technologies, Inc. and Defendant Murray Corporation each filed an Opposition. (Docs. 126 and 127.)

On December 2, 2009, Defendant Oetiker filed a Reply. (Doc. 133.)

On February 12, 2010, the Court filed a Minute Order granting Defendant Watts' request for further discovery. (Doc. 139.)

On May 7, 2010, at the request of the parties, the Court filed a Stipulation And Order To Extend Supplemental Briefing Schedule Regarding Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint.  (Doc. 174.)

_____

the entity alleged in the Second Amended Complaint to be "Oetiker Corporation, aka Oetiker Amerika."  (Doc. 118.)  The Court refers to Defendant Oetiker, Inc. as "Oetiker."

On July 1, 2010, Plaintiff filed a Supplemental Memorandum In Opposition.  (Doc. 199.)

On July 16, 2010, Defendant Oetiker filed a Response to Plaintiff's Supplemental Memorandum In Opposition.  (Doc. 209.)

Pursuant to Local Rule 7.2(d), the Court elected to decide the motion on the pleadings without a hearing.  (Doc. 119.)

## BACKGROUND

Plaintiff is the association of apartment owners for the Hokua, a condominium building located at 1288 Ala Moana Boulevard, Honolulu, Hawaii.  (Second Amended Complaint at ¶ 1, (Doc. 107).)  Plaintiff filed its Second Amended Complaint on August 5, 2009, against various Defendants involved in the manufacture, design, and installation of the Hokua's potable water systems.  <u>Id.</u>  Defendants Watts Water Technologies, Inc. ("Watts") and Defendant Murray Corporation ("Murray") each filed cross-claims against Defendant Oetiker.

Plaintiff alleges that the Hokua was built between 2003 and early 2006.  <u>Id.</u> at ¶ 15.  Each of the 245 residential apartment units in the Hokua has its own, separate potable water system.  <u>Id.</u> at ¶¶ 13-15.  The parties agree that clamps manufactured by Defendant Oetiker, a Michigan corporation, were installed in the Hokua's potable water systems.  These potable water systems were installed between late 2004 and early 2006.  <u>Id.</u>  Plaintiff claims that the Hokua's potable water systems began to leak in

3

September 2006.  <u>Id.</u> at ¶ 20.  Plaintiff asserts that defective

brass fittings and clamps, installed in the potable water

systems, caused the leakage.  <u>Id.</u> at ¶¶ 27-33.

## STANDARD OF REVIEW

Plaintiff bears the burden of demonstrating that personal

jurisdiction is appropriate.  <u>Flynt Distrib. Co, Inc. V. Harvey</u>,

734 F.2d 1389, 1392 (9th Cir. 2004).  Where, as here, the motion

is based on written materials rather than an evidentiary hearing,

"the plaintiff need only make a prima facie showing of

jurisdictional facts."  <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th

Cir. 1990). Uncontroverted allegations in the plaintiff's

complaint must be taken as true.  <u>AT&T v. Compagnie Bruxelles</u>

<u>Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996).  Although the

plaintiff cannot simply rest on the bare allegations of its

complaint, conflicts between parties over statements contained

in affidavits must be resolved in the plaintiff's favor.

<u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800

(9th Cir. 2004).

## ANALYSIS

Where, as here, no federal statute governs personal

jurisdiction, the district court applies the law of the state in

which the court sits.  Fed. R. Civ. P. 4(k)(1)(A); <u>Panavision</u>

<u>Int'l L.P. v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir. 1998).

Hawaii's long-arm jurisdictional statute is coextensive with

federal due process requirements, so the jurisdictional analyses under state law and federal due process requirements are the same.  <u>Cowan v. First Ins. Co.</u>, 61 Haw. 644, 649 (1980).

For the Court to obtain jurisdiction, Defendant Oetiker must have sufficient "minimum contacts" with the state of Hawaii such that the exercise of due process "does not offend traditional notions of fair play and substantial justice." <u>Schwarzenegger</u>, 374 F.3d at 801 (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).  Due process is satisfied if there is either "general jurisdiction" or "specific jurisdiction" over Defendant Oetiker.  <u>Sher</u>, 911 F.2d at 1361.

## I.   General Jurisdiction Over Defendant Oetiker Has Not Been Established.

Under general jurisdiction, a defendant whose contacts with a state are "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts.  <u>Tuazon v. R.J. Reynolds Tobacco Co.</u>, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415 (1984)).  The standard for establishing general jurisdiction is high and requires that the defendant's contacts approximate physical presence.  <u>Tuazon</u>, 433 F.3d at 1169.

The parties have not argued that the Court has general jurisdiction over Defendant Oetiker, so the Court does not reach

the question of general jurisdiction over Oetiker.[2]

## II. Plaintiff and Cross-Claimants Have Not Made A Prima Facie Showing That The Court Has Specific Jurisdiction Over Defendant Oetiker.

In determining whether to exercise specific jurisdiction, the Court examines the quality and nature of Defendant Oetiker's contacts with the forum state in relation to the cause of action. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). The Ninth Circuit Court of Appeals has adopted a three-prong test for analyzing specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007) (internal citations omitted).

---

[2] Plaintiff described its position as follows: "As stated in the Association's Opposition Memorandum, the Association is not asserting that Hawaii has general jurisdiction over Oetiker but that Hawaii has specific jurisdiction over Oetiker." (Plaintiff's Supplemental Memorandum In Opposition To Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint at p. 5, (Doc. 199).)

Plaintiff bears the burden of satisfying the first two prongs of the test. Id. If Plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. Id. If, on the other hand, Plaintiff succeeds in satisfying the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (citing Schwarzenegger, 374 F.3d at 802).

**A.  Plaintiff and Cross-Claimants have not sufficiently alleged that Defendant Oetiker purposefully availed itself of the privilege of doing business in Hawaii.**

The first prong of the specific jurisdiction analysis can be satisfied by Defendant Oetiker's purposeful availment of the privilege of doing business in the forum state or purposeful direction of activities at the forum state, or by some combination of purposeful availment and direction. Menken, 503 F.3d at 1057. A purposeful availment analysis is most often applied in suits where the defendant has placed a product in the stream of commerce, or in suits sounding in contract. Holland Am. Line Inc. v. Wärtsilä N. Am., Inc., 485 F.3d 450, 459-460 (9th Cir. 2007) (internal citations omitted). A purposeful direction analysis applies only to intentional torts. Id. (internal citations omitted). Plaintiff and Cross-Claimants Watts and Murray allege that Defendant Oetiker placed defective clamps into the stream of commerce. A purposeful availment

7

analysis applies.

Plaintiff has alleged an explanation as to how Defendant Oetiker's clamps were installed in the Hokua.  Plaintiff alleges that the clamps were installed by a local plumbing contractor, who purchased the clamps from a distributor, Barry Pipe & Supply, Inc.  (Supplemental Memorandum In Opposition To Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint at p. 4, (Doc. 199).)  Plaintiff alleges that the distributor purchased the clamps from Defendant Watts, who purchased them from Defendant Murray.  Id.  Plaintiff claims that Defendant Murray purchased the clamps directly from Defendant Oetiker.  Id.

Plaintiff's argument that Defendant Murray purchased the clamps directly from Defendant Oetiker is based on an internal e-mail between employees of Defendant Watts.  (E-mail dated Oct. 13, 2004, attached as Exh. E-2 to Plaintiff's Memorandum In Opposition To Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint, (Doc. 124-11).)  The entirety of the e-mail states:

> I [Mary M. Stewart] talked with Jim SIlk [sic], Murray Corp, today about the 5/8" Cinch Clamp. Murray can bbuy [sic] 50,000 5/8" clamps from Oetiker for .27/ea. He seems to think Oetiker knows who Murray's customer may be.  He tells me that Murray plans to manufacture 5/8" Clamps and have available for us by Jan-Feb. I asked for an update on his production release dates by size. He will get back to me on this.

The plain language of the e-mail does not support Plaintiff's position.  The e-mail states that Mary M. Stewart, an employee of

Defendant Watts, spoke with Jim Silk, an employee of Defendant Murray.  According to the e-mail, Silk represented that he could buy "5/8" clamps from Oetiker."  There is no evidence, however, that any purchase was actually made.

D. Chris Parker, the President of Defendant Oetiker, stated in his declaration that during the relevant time period, Defendant Oetiker sold clamps only to a company called Uponor HSDNA ("Uponor").  (Declaration of D. Chris Parker ("Parker Decl.") at ¶ 6, (Doc. 209-2).)  Uponor and Defendant Oetiker were bound by a Manufacturing And Supply Agreement ("Agreement"), which lasted from May 2002 through April 2006, in which Defendant Oetiker sold clamps exclusively to Uponor for use with tubing products in plumbing and heating applications. (Agreement, attached as Exh. 24 to Plaintiff's Supplemental Memorandum In Opposition To Defendant Oetiker, Inc.'s Motion To Dismiss Second Amended Complaint, (Doc. 199-2).)  Parker states in his declaration that during the relevant time period, Defendant Oetiker did not transact any business in Hawaii, and that Defendant Oetiker had no knowledge that any of its products were being considered for the Hokua.  (Parker Decl. at ¶¶ 3, 8, (Doc. 209-2).)  According to Parker's declaration, Defendant Oetiker was unable to find any records of any sales of clamps to either Defendant Murray or Defendant Watts.  Id. at ¶ 6.  Parker also states that during the relevant time period, Defendant

Oetiker did not manufacture or sell a 5/8" clamp, the specific model referenced in the October 31, 2004 e-mail. Id. at ¶ 7.

The Ninth Circuit Court of Appeals provided guidance on how to apply a purposeful availment analysis in Holland Am. Line Inc. v. Wärtsilä N. Am., Inc. 485 F.3d at 459-460. There the appellate court stated that the placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state. Id. at 459 (citing Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 112 (1987)). Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state. Id. (citing Asahi, 480 U.S. at 112). Purposeful availment requires "something more" than the mere placement of a product into the stream of commerce. Id. (citing Asahi, 480 U.S. at 111).

Plaintiff asserts that Defendant Oetiker's Agreement with Uponor and Defendant Oetiker's website satisfy the "something more" requirement. Defendant Oetiker placed its clamps into the stream of commerce by selling them to Uponor. (Parker Decl. at ¶ 4, (Doc. 209-2).) There is no evidence, however, that Defendant Oetiker had any knowledge or expectation that the clamps would be installed in Hawaii. The website, available at www.oetiker.com, is entirely passive, containing information on

10

the various products manufactured by Defendant Oetiker.  The website does not provide any direct means for purchasing parts or requesting services.  In <u>Holland Am. Line</u>, the Ninth Circuit Court of Appeals held that such passive websites do not satisfy the purposeful availment standard.  485 F.3d at 460.

Drawing all reasonable inferences in Plaintiff's favor, there is no evidence that Defendant Oetiker purposefully availed itself of the privilege of conducting activities in the state of Hawaii.

> **B.   Plaintiff has not sufficiently alleged that its claims arose from Defendant Oetiker's forum-related activities.**

The second prong of the minimum contacts test requires that Plaintiff's claims arise from Defendant's forum-related activities.  In determining whether claims arise out of forum-related conduct, the Ninth Circuit Court of Appeals has adopted a "but for" test.  <u>Menken</u>, 503 F.3d at 1058 (citing <u>Myers v. Bennett Law Offices</u>, 238 F.3d 1068, 1075 (9th Cir. 2001)).  As discussed above, Defendant Oetiker did not purposefully avail itself of the privilege of doing business in Hawaii.  Plaintiff's claims therefore did not arise "but for" Defendant's alleged forum-related activities.  <u>Menken</u>, 503 F.3d at 1058.

> **C.   The Court does not reach the issue of reasonableness.**

The third prong of the minimum contacts test requires that the exercise of jurisdiction must be reasonable.  Courts reach

this step only if the plaintiff demonstrates that the defendant's activities were purposefully directed at the forum state and that the plaintiff's claims arose out of the defendant's forum-related conduct.  Doe v. American Nat. Red Cross, 112 F.3d 1048, 1052 (9th Cir. 1997) (citing Sinatra v. Nat. Enquirer, Inc., 854 F.2d 1191, 1198 (9th Cir. 1988)).  Plaintiff here has not sufficiently alleged that Defendant Oetiker purposefully availed itself of the privilege of doing business in Hawaii or that Plaintiff's claims arose from Defendant Oetiker's forum-related activities.  It is unnecessary to reach the question of whether the exercise of personal jurisdiction would be reasonable.

//

//

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

(1)    Defendant Oetiker's Motion to Dismiss Second Amended

Complaint, filed on October 16, 2009, (Doc. 118), is

**GRANTED;**

(2)    The Clerk of Court is **DIRECTED** to enter judgment in favor of

Defendant Oetiker and to close the case.


IT IS SO ORDERED.

DATED:     September 27, 2010, Honolulu, Hawaii.



/S/ Helen Gillmor
_____
Helen Gillmor
United States District Judge


Ass'n of Apt. Owners of the Hokua @ 1288 Ala Moana v. Watts Water
Technologies, Inc., et al.; Civil No. 08-00463 HG-KSC; **ORDER
GRANTING DEFENDANT OETIKER'S MOTION TO DISMISS SECOND AMENDED
COMPLAINT (DOC. 118).**